# EXHIBIT A

Electronically FILED by Superior Court of California, County of Los Angeles on 09/04/2020 01:35 PM Sherri R. Carter, Executive Officer/Clerk of Court, by R. Perez, Deputy Clerk
20STCV33881

Assigned for all purposes to: Spring Street Courthouse, Judicial Officer: Thomas Long

1 | Vincent W. Davis (SBN 125399)
Viktor V. Ginko, Esq. (SBN 259664)
2 | Law Offices of Vincent W. Davis & Associates
3 | 150 N. Santa Anita Avenue, Suite 200
Arcadia, CA 91006
4 | Phone: (626) 446-6442
Facsimile: (626) 446-6454
5 | Email: viktor@vincentwdavis.com

6 | Attorneys for Plaintiffs

7

8 | IN THE SUPERIOR COURT OF CALIFORNIA

9 | FOR THE COUNTY OF LOS ANGELES

10 | CENTRAL DISTRICT

11 | (Unlimited Jurisdiction)

12 |
13 | THE ESTATE OF YAELI MOZZELLE
GALDAMEZ aka "ANDREW          ) Case No.:    20STCV33881
14 | GALDAMEZ/ANDREW ELIJAH MARTINEZ" )
and SILVIA ABIGAIL MARTINEZ, an    )   **COMPLAINT FOR DAMAGES**
15 | Individual,                        )
                                   )   **1. NEGLIGENCE (WRONGFUL**
16 |          PLAINTIFFS,             )   **DEATH)**
   vs.                             )   **2. FAILURE TO PROTECT**
17 |                                  )   **3. MEDICAL MALPRACTICE**
COUNTY OF LOS ANGELES, by and through )   **4. NEGLIGENCE AGAINST THE**
18 | DEPARTMENT OF CHILDREN AND       )   **COUNTY OF LOS ANGELES**
FAMILY SERVICES; POMONA VALLEY   )   **DEPARTMENT OF CHILDREN**
19 | HOSPITAL; DR. KALPESH BHAVAR, M.D.; )   **AND FAMILY SERVICES**
DR. ALEXANDER NGUYEN, D.O.;       )   **5. NEGLIGENCE AGAINST UNION**
20 | KENNETH BOULDIN, MSW, MEEKA      )   **PACIFIC RAILROAD**
BAGAI, MSW, BESY HENRIQUEZ and    )   **6. NEGLIGENCE AGAINST**
21 | ANGLICA SVEDAS; UNION PACIFIC    )   **METROPOLITAN**
RAILROAD; METROPOLITAN           )   **TRANSPORTATION AUTHORITY**
22 | TRANSPORTATION AUTHORITY; and    )   **7. LOSS OF CONSORTIUM**
DOES 1 TO 200 Inclusive,          )   **8. NEGLIGENT SUPERVISION,**
23 |                                  )   **TRAINING, HIRING AND**
          DEFENDANTS.              )   **RETENTION**
24 |                                  )   **9. MONELL-RELATED CLAIMS**
25 |                                  )
                                   )   **[JURY TRIAL DEMANDED]**
26 |
27 |
28 |

LAW OFFICES OF VINCENT W. DAVIS & ASSOCIATES
150 N. SANTA ANITA AVENUE, SUITE 200
ARCADIA, CALIFORNIA 91006
PHONE (626) 446.6442, FACSIMILE (626)446.6454

COMES NOW Plaintiffs The Estate of Yaeli Mozzelle Galdamez aka

"Andrew Galdamez/Andrew Elijah Martinez" & Silvia Abigail Martinez by and through their

Attorneys Vincent W. Davis & Associates and sets forth the following Complaint alleging as

follows:

## NATURE OF THE ACTION

1.      The Plaintiffs The Estate of Yaeli Mozzelle Galdamez aka "Andrew Galdamez/Andrew

Elijah Martinez" & Silvia Abigail Martinez is an individual,  (Hereinafter interchangeably referred

to as "Plaintiff(s)", reside in the County of Los Angeles and the State of California; and, are bringing

this action based upon information and belief and upon the investigation by Counsel and by

Plaintiff's Executor/Administrator of the Estate of decedent Yaeli Mozzelle Galdamez aka "Andrew

Galdamez" who met her untimely demise on or about Wednesday, September 4th, 2019 when she

was run over by a train proceeding at or near 2870 Pomona Boulevard, in Pomona California near

the "Spadra Cemetery" when she/he laid down on the railroad tracks in front of a moving train

traveling approximately 60 MPH and pronounced dead at or about 21:45:00.

2.      That, the decedent became a ward of the Los Angeles County Department of Children and

Family services on or about April, 2016 when it was alleged that Mother, Silvia Abigail Martinez

had "Slapped" and/or "Struck" the child in his/her face because of purported inappropriate behavior

and a fear for her own safety.

3.      That, as a result of the action(s) of the County of Los Angeles -DCFS through Los Angeles

County Counsel set forth a Petition in Children's Court alleging Violations of Welfare and

Institutions Code Sections 300 (a) Serious Physical Harm; 300 (b) Failure to Protect; and, took

custody of Yaeli Mozzelle Galdamez aka "Andrew Galdamez" at the age of 14 with a Date of Birth

being April 23, 2000.

4.      That, during the period of time the Decedent was under the care and custody of the Los

Angeles County DCFS she/he indicated that there was a need for her to "Transition" from a female

to a male based upon the desire to live out her/his life a "Man" rather than as a "Woman" to which

LAW OFFICES OF VINCENT W. DAVIS & ASSOCIATES
150 N. SANTA ANITA AVENUE, SUITE 200
ARCADIA, CALIFORNIA 91006
PHONE (626) 446.6442, FACSIMILE (626)446.6454

LAW OFFICES OF VINCENT W. DAVIS & ASSOCIATES
150 N. SANTA ANITA AVENUE, SUITE 200
ARCADIA, CALIFORNIA 91006
PHONE (626) 446.6442, FACSIMILE (626)446.6454

1   the parties in charge of this process Child Services Worker Besy Henriquez and Child Services

2   Worker Anglica Svedas failed to address the special needs of the decedent.

3   5.      That, Social Worker Kenneth Bouldin, MSW; and Meeka Bagai, MSW, also failed to

4   properly address and provide services to the Decedent to address her needs regarding "Transition"

5   from a female to a male.

6   6.      During the course and treatment of the Decedent he was transferred to a facility at the Junior

7   Blind of America, located at 5300 Angeles Vista Boulevard, in Los Angeles, California where a

8   range of counseling services and management of a "Group Home" took place purportedly providing

9   medications and counseling services for an array of "Hormonal Issues" which were supposedly

10  designed to aid in the transition of Yaeli Mozzelle Galdamaez from a young woman to a young man

11  otherwise to be known as "Andrew Galdamez".

12  7.      That, Byron Smith, the "Therapist" at the Blind of America was provided little or no

13  guidance concerning how to address the circumstances of the Decedent as the DCFS personnel set

14  forth hereinabove failed to properly supervise the day to day concerns of "Andrew Galdamez" such

15  that he could facilitate a complete sexual transition from a female to male including but not limited

16  to: a failure to intervene with counseling and therapy when an attempted suicide was made by the

17  Decedent on June 7, 2019, before his final demise on or about September 4, 2019.

18  8.      That, DCFS failed to utilize its' vast resources to facilitate the necessary counseling and

19  guidance services readily available from the LBGTQ Community and Medical Services such that

20  "Andrew Galdamez" could successfully transition from a female to a male as he was dependent

21  upon the supervision of various County of Los Angeles Children's Services workers who failed

22  miserably concerning the Decedent while Plaintiff's Mother, Silvia Abigail Martinez, did everything

23  within her power and resources to "Cooperate" with DCFS; and, to accept the transition of her

24  daughter from a female to a male seeking to take on the identity of "Andrew Galdamez/Andrew

25  Elijah Martinez".

26  9.      That, on or about June 7, 2019, the Decedent was admitted to Pomona Valley Hospital

27  Medical Center, located at 1798 Garey Avenue, in Pomona, California, with a postal zip code of

28

LAW OFFICES OF VINCENT W. DAVIS & ASSOCIATES
150 N. SANTA ANITA AVENUE, SUITE 200
ARCADIA, CALIFORNIA 91006
PHONE (626) 446.6442, FACSIMILE (626)446.6454

1    91757-2918 with a "Chief Complaint" of "Accidently Overdosing" on 2 bottles of Tylenol and 2

2    bottles of Advil "...While denying any suicidal intent or the desire to hurt others."

3    10.    That, the Decedent remained hospitalized for three days wherein his Physician Dr. Kalpesh

4    Bhavar, M.D. did little or nothing to assist in the care and treatment of "Andrew"; while, Dr.

5    Alexander Nguyen, D.O. set forth specific discharge instructions that required additional Psychiatric

6    Care and Treatment at a "Psychiatric Hospital" being discharged on June 7, 2019 at or about

7    16:47:00.

8    11.    That, neither Dr. Bhavar, M.D., Dr. Alexander Nguyen, D.O. nor any other personnel

9    employed at the Pomona Valley Hospital Medical Center acted upon, nor, followed within the

10    "Standard of Care" to insure that the Decedent was properly "Discharged" with the medical

11    safeguards in place to look after a person clearly mentally unstable; and, suicidal – such that their

12    specific failures to discontinue a "5150 Medical Hold" on or about June 9, 2019, with Dr. Kalpesh

13    Bhavar, M.D. indicating that "Andrew's mood has improved with no self injurious behaviors noted

14    here in the medical floor with the Biological "Sister" being the care-giver."; further wrongfully

15    attesting that: "The patient is not imminent danger to self or others" – which, was inaccurate; a

16    "Mis-diagnosis"; and, a contributory factor to the acts and/or omission(s) responsible for delivering

17    medical care below the standard of care for individuals such as the Decedent received "cleared" to

18    be discharged by Dr. Alexander Nguyen, D.O. who also acted and/or omitted and proceeded medical

19    services below the applicable standard of care as an individual who was responsible for delivering

20    medical care to a person suffering maladies like the Decedent under these circumstances.

21    12.    Furthermore, that Pomona Valley Hospital Medical Center in the course of

22    transmitting/transferring the Decedent to BHC Alhambra Hospital located at: 4619 N. Rosemead

23    Boulevard, in  Rosemead, California, with a zip code of  91770 failed to properly discharge the

24    patient "Andrew Elijah Martinez" thus leaving him without proper psychiatric medical care and

25    treatment because "...The name on his I.D. [Andrew Elijah Martinez] does not match the name on

26    his insurance - [Yaeli Galdamez]" ; this, a blatant failure to be sensitive to the overall circumstances

27    which were the cause of his admission and directly lead to the Decedent being "Discharged" from

28

LAW OFFICES OF VINCENT W. DAVIS & ASSOCIATES
150 N. SANTA ANITA AVENUE, SUITE 200
ARCADIA, CALIFORNIA 91006
PHONE (626) 446.6442, FACSIMILE (626)446.6454

1  Pomona Valley Hospital Medical Center without any follow-up medical care, medical supervision;

2  nor, treatment for what was clearly a need for round the clock suicidal medical monitoring and care

3  which as a direct and proximate cause lead to him being "Medically Unsupervised" for months on

4  end, from June 9, 2019, until "Andrew" met his demise on September 4, 2019.

5  13.    That, Pomona Valley Hospital Medical Center, and Physicians — Dr. Kalpesh Bhavar, M.D.;

6  and, Dr. Alexander Nguyen, D.O. , all breached the standard of care required to be commonly

7  followed by medical providers in the Los Angeles, California community regarding potentially

8  suicidal medical psychiatric patients.

9  14.    That, on or about Wednesday, September 4, 2019, despite being responsible for maintaining

10  the grounds and secured areas at or near  2870 Pomona Boulevard, in Pomona California near the

11  "Spadra Cemetery" it is alleged, based upon information and belief, that the Defendant, Union

12  Pacific Railroad, whose offices are located at 750 Lamar Street, in Los Angeles, California, with a

13  zip code of  90031, in the County of Los Angeles, failed to properly maintain the area where the

14  Decedent was able to simply walk through an opening in the fence — purportedly designed to

15  prevent individuals from being able to have access to the grounds at or near moving trains — and,

16  then met his demise by subjecting himself into the path of an oncoming train; all of which was

17  confirmed by Union Pacific Police Department Officers Acosta and Captain Johnson under Report

18  Number 19055897 occurring at or near 20:42:00.

19  15.    That, on or about Wednesday, September 4, 2019, based upon investigation; and, upon

20  information and belief, a Metropolitan Transportation Authority train traveling some 60 Miles Per

21  Hour, not keeping proper lookout and/or caution proceeded to kill "Andrew Elijah Martinez" who by

22  Los Angeles County Coroner's account of the factual circumstances was presented with physical

23  evidence from the remains that the Decedent was run over by a train causing his death at or near

24  approximately 20:45:00.

25  16.    That, Social Workers Kenneth Bouldin, MSW and Meeka Bagai, MSW from the Los

26  Angeles County Department of Children's Services from June 7, 2019, until Andrew's demise on

27  September 4, 2019 failed to properly supervise and manage this case in their care and custody; that

28

COMPLAINT FOR DAMAGES

1  neither social worker acted to obtain follow up care and treatment of the Decedent upon being

2  discharged from Pomona Valley Hospital Medical Center after he had clearly attempted suicide; and,

3  was on a "5150 Psychiatric Hold" with literally little or no instruction, involvement, nor supervision

4  and by their omission(s) are also a direct and proximate cause of the Wrongful Death of their ward.

5  17.    That, based on investigation and upon information and belief there appears to be other

6  individuals; and/or entities which are either in full or in part responsible for the death of Andrew

7  Elijah Martinez aka Andrew Galdamez, seeking to be formerly known as Yaeli Galdamez and upon

8  learning of these entities and/or individuals they will be added as "DOE Defendants"

9

## JURISDICTION AND VENUE

11  18.    This Complaint seeks damages for violations of the civil rights, privileges, and

12  immunities guaranteed by the First and Fourteenth Amendments of the United States

13  Constitution, pursuant to 42 U.S.C. § 1983 and 1988, and for violations of California State

14  law.

15  19.    This Court has jurisdiction over this lawsuit pursuant to 28 U.S.C. §§ 1331 and 1343.

16  20.    This Court has supplemental jurisdiction over the state law claims asserted herein

17  pursuant to 28 U.S.C. § 1367 because the claims form part of the same case or controversy

18  arising under the United States Constitution and federal law.

19  21.    Plaintiffs' claims arose in the County of Los Angeles, State of California. Venue

20  therefore lies in the Northern District of California pursuant to 28 U.S.C. § 1391(b)(2).

21  22.    Plaintiffs' injuries and damages occurred within the Central Judicial District of the Los

22  Angeles Superior Court as both the injury and damages and principal place of business for majority

23  of Defendants is located in the City of Los Angeles, County of Los Angeles.

24

## PARTIES AND GENERAL ALLEGATIONS

26  23.    The Estate of Yaeli Mozzelle Galdamez Aka "Andrew Galdamez/Andrew Elijah Martinez"

27  the Decedent was, at all times relevant hereto, a resident of the County of Los Angeles

28

LAW OFFICES OF VINCENT W. DAVIS & ASSOCIATES
150 N. SANTA ANITA AVENUE, SUITE 200
ARCADIA, CALIFORNIA 91006
PHONE (626) 446.6442, FACSIMILE (626)446.6454

COMPLAINT FOR DAMAGES

24.     Plaintiff Silvia Abigail Martinez (hereafter also "MOTHER") is the natural mother and successor in interest and an heir at law of Yaeli Mozzelle Galdamez Aka "Andrew Galdamez/Andrew Elijah Martinez", the deceased. Plaintiff is a resident of the State of California and resided within the State of California and the County of Los Angeles at all times herein alleged. She brings this claim for herself personally, as Yaeli Mozzelle Galdamez Aka "Andrew Galdamez/Andrew Elijah Martinez"'s successor in interest and heir, as the personal representative of the estate, and, as applicable, pursuant to California Code of Civil Procedure § 377.30, et seq.

25.     Defendant COUNTY OF LOS ANGELES (hereafter also defendant "COLA") is, and at all times herein alleged was, a public entity organized and existing under the laws of the State of California.

26.     Defendant Department of Children and Family Services (hereafter also defendant "DCFS") is, and at all times herein alleged was, a public entity organized and existing under the laws of the State of California and is an agency of the COLA.

27.     Defendant Pomona Valley Hospital (hereafter also defendant "PVH") is a not-for-profit independent organization.

28.     Defendant Dr. Kalpesh Bhavar, M.D., (hereafter also defendant "BHAVAR") was at all times mentioned herein a member of the Mental Health staff as a psychiatrist in Claremont, California and is affiliated with multiple hospitals in the area including Pomona Valley Hospital and was responsible for providing Decedent with access to mental health and medical care, treatment and intervention to prevent attempts at suicide by Decedent. Defendant BHAVAR is sued in his individual capacity.

29.     Defendant Dr. Alexander Nguyen, D.O. (hereafter also defendant "NGUYEN") was at all times mentioned herein a Hospitalist, Internist at Pomona Valley Hospital. Defendant NGUYEN is sued in his individual capacity.

30.     Defendant Kenneth Bouldin, MSW (hereafter also defendant "BOULDIN") was at all times mentioned herein a social worker, employee and agent of Defendant COLA who was responsible

LAW OFFICES OF VINCENT W. DAVIS & ASSOCIATES
150 N. SANTA ANITA AVENUE, SUITE 200
ARCADIA, CALIFORNIA 91006
PHONE (626) 446.6442, FACSIMILE (626)446.6454

for, among other things, timely and appropriately performing emergency services need for Decedent. Defendant BOULDIN is sued in his individual capacity.

31.     Defendant Meeka Bagai, MSW (hereafter also defendant "BAGAI") was at all times mentioned herein a social worker, employee and agent of Defendant COLA who was responsible for, among other things, timely and appropriately performing emergency services need for Decedent. Defendant BAGAI is sued in his individual capacity.

32.     Defendant Besy Henriquez (hereafter also defendant "HENRIQUEZ") was providing services need for Decedent. Defendant HENRIQUEZ is sued in his individual capacity.

33.     Defendant Anglica Svedas (hereafter also defendant "SVEDAS") was providing services need for Decedent. Defendant SVEDAS is sued in his individual capacity.

34.     Defendant Union Pacific Railroad (hereafter also defendant "UPR") was at all times mentioned herein the principal operating company of Union Pacific Corporation.

35.     Defendant Metropolitan Transportation Authority (hereafter also defendant "MTA") was at all times mentioned herein a public transit agency organized and existing under the laws of the State of California.

36.     The "INCIDENT SITE" refers to the railroad tracks and the property leading up to and at which this incident took place and the surrounding and adjacent property about, around and near the tracks, which includes, but is not limited to, the location at which Yaeli Mozzelle Galdamez Aka "Andrew Galdamez/Andrew Elijah Martinez accessed the tracks in the City of Pomona and the dirt roads, pedestrian walkways and/or paths leading to the tracks.

37.     The true names and identities of Defendants Does 1 through 50 are presently unknown to Plaintiffs. Plaintiffs allege that each of Defendants Does 1 through 50 were employed by or agents of Defendants at the time of the conduct alleged herein.

38.     Plaintiffs will seek to amend this Complaint as soon as the true names and identities of Defendants Does 1 through 50 have been ascertained

//

COMPLAINT FOR DAMAGES

**FIRST CAUSE OF ACTION**

NEGLIGENCE (WRONGFUL DEATH) AGAINST ALL DEFENDANTS

39.    Plaintiffs re-allege paragraphs 1-38 and incorporate them herein as though fully set forth.

40.    As the UPR train, which was being operated by the engineers and other members of the crew, approached the INCIDENT SITE, Defendant UPR and DOES 1 through 25, inclusive, and each of them, so wantonly, recklessly, negligently and carelessly operated, controlled, entrusted and maintained the train so as to cause the train to strike and kill the Decedent.

41.    At all times relevant hereto, Defendant UPR and DOES 1 through 25, inclusive, and each of them, negligently entrusted to the engineers and the other members of the crew the train that was owned, leased, controlled, designed, developed, constructed, managed, operated, inspected, maintained -and/or repaired by Defendant UPR and Defendants.

42.    Defendant UPR and DOES 1 through 25, inclusive, and each of them, permitted the engineers and the other members of the crew to operate, engineers and/or drive the train as their agent, servant, contractor, subcontractor, independent contractor and/or employee.

43.    The engineers and the other members of the crew were negligent *Inter alia* in operating the train by failing to comply with safety regulations, foiling to sound a sufficient audible warning device, failing to regulate said train under sate speed and/or foiling to keep a lookout for Decedent, foiling to slow or stop the train and foiling to control the train so as to avoid hitting Decedent.

44.    Defendants UPR and DOES 1 through 25, and each of them, knew or should have known that the engineers and the other members of (he crew were incompetent or unfit to operate, engineers and/or drive the subject train. Said Defendants knew or should have known that the engineers and the other members of the crew were likely to use the subject train, or any other train, in a manner involving unreasonable risk of physical harm to others whom said Defendants should expect to share in or be endangered by the use of the their train so as to directly and proximately cause Decedent's death and Plaintiffs' injuries and damages.

LAW OFFICES OF VINCENT W. DAVIS & ASSOCIATES
150 N. SANTA ANITA AVENUE, SUITE 200
ARCADIA, CALIFORNIA 91006
PHONE (626) 446.6442, FACSIMILE (626)446.6454

LAW OFFICES OF VINCENT W. DAVIS & ASSOCIATES
150 N. SANTA ANITA AVENUE, SUITE 200
ARCADIA, CALIFORNIA 91006
PHONE (626) 446.6442, FACSIMILE (626)446.6454

45.     At all times relevant hereto, Defendants UPR and DOES 1 through 25, and each of them, also negligently trained or negligently failed to train the engineers and the other members of the crew of the subject train.

46.     Defendants UPR and DOES 1 through 25, and each of them, *inter alia* negligently trained or negligently failed to train the engineers and other members of the crew, who inter alia negligently failed comply with safety regulations, failed to sound a sufficient audible warning device, failed to maintain the subject train under safe speed and/or failed to keep a lookout for Decedent and control the train so as to avoid hitting Decedent

47.     Defendants UPR and DOES 1 through 25, and each of them, also breached their duly to ensure the horn on the locomotive involved in the incident complied with the audibility requirements of 49 CFR Section 229.129. Defendants have no evidence that the train horn complied with 49 C.F.R. Section 229.129 at the time of the incident In fact, the horn did not provide sufficient audible warning of the train's approach prior to the incident.

48.     Defendants UPR and DOES 1 through 25, and each of them, by themselves and through their crew, breached their duty to ensure that the train horn was properly sounded to warn of the train's approach. To be "properly sounded" the horn must not only be loud enough, it must be blown in the correct sequence and for a sufficient duration. The horn was not properly sounded.

49.     Defendants UPR and DOES 1 through 25, and each of them, have knowledge that their crews do not properly sound the horn consistently, but have chosen not to investigate or punish horn violations, monitor for insufficient horn activation or otherwise attempt to accurately document these violations. Instead, Defendants UPR and DOES 1 through 25 have intentionally misrepresented the extent of the problem by publishing false and misleading information concerning the nature and extent of the problem. As a result, their train crews are aware that the railroad condones horn violations. It is the routine practice of Defendants UPR and DOES 1 through 25 to ignore violations of horn rules. Accordingly, Defendants UPR and DOES 1 through 25, and each of them, breached their duties.

LAW OFFICES OF VINCENT W. DAVIS & ASSOCIATES
150 N. SANTA ANITA AVENUE, SUITE 200
ARCADIA, CALIFORNIA 91006
PHONE (626) 446.6442, FACSIMILE (626)446.6454

50.     Defendants UPR and DOES 1 through 25, and each of their crew also breached their duty to slow or stop the tram to avoid "a specific, individual hazard" at the INCIDENT SITE. They also failed to approach the INCIDENT SITE prepared to stop due to "an essentially local safety hazard." If the crew would have been prepared to stop, slowed the train and/or applied the brakes in a timely fashion they could have avoided the collision or changed the dynamic of the collision, the extent (hat Decedent's death and Plaintiffs injuries and damages from the collision could have been significantly reduced or eliminated.

51.     At the time of this incident the conditions at the INCIDENT SITE created an essentially local safety hazard. However, Defendants UPR; MTA; and DOES 1 through 50, and each of them, negligently failed to recognize essentially local safety hazards, failed to instruct train crews and others how to identify essentially local safety hazards, failed to take any reasonable steps to reduce essentially local safety hazards and failed to warn of their existence. Accordingly, UPR, the crew on the UPR train, MTA and DOES 1 through 50, and each of them, did nothing to slow the train, prepare to slow the train or otherwise account for the local safety hazard at the INCIDENT SITE. The existence of an unidentified and unaccounted for local safety hazard was one of the contributing factors that caused this incident

52.     The area in and around this crossing should have been protected by properly maintained fence as to prevent entry to the rail tracks by the Decedent. The failure of the train involved in this incident to slow for the unsafe conditions at this crossing was a contributing factor to this incident

53.     Defendants UPR and DOES 1 through 25, and each of them, also failed to instruct the train crews on the appropriate circumstances under which they should be prepared to brake, slow or stop the train for safety hazards. Defendants UPR and DOES 1 through 25, and each of them knew or should have known the risks to the public created by their failure to instruct their train crews about the duty to slow or stop the train to avoid safety hazards at unmarked pedestrian crossings, but have elected to not instruct their crews about these duties. Because of this inadequate training, the crew approached the INCIDENT SITE without adequately addressing the existing safety hazards at the

INCIDENT SITE. The crew's lack of training and preparedness was one of the contributing factors mat caused this incident

54.     Defendants UPR and DOES 1 through 25, and each of them, were operating, controlling, entrusting, maintaining, inspecting and/or repairing the subject train in a negligent and careless manner and in violation of California statutes and regulations and are therefore negligent per se. Said Defendants, and each of them, also violated statutory duties in their entrustment of the train to the engineers and the other members of the crew and are therefore negligent per se. Said Defendants, and each of them also violated statutory duties in their training of the engineers and the other members of the crew and are therefore negligent per se. The purpose of the aforementioned statutes and/or regulations is to protect the interest of the public and Decedent from the kind of harm that resulted from Defendants' actions or inactions and that caused Decedent's death and Plaintiffs injuries and damages and the particular hazard caused by Defendants' actions or inactions, which caused Decedent's death and Plaintiff's injuries and damages.

55.     At all times relevant hereto, Defendants UPR and DOES 1 through 25, and each of them, negligently hired and discharged mandatory and/or non-delegable duties in the ownership, lease, control, development, construction, design, management, inspection, maintenance and/or repair of the INCIDENT SITE and/or the subject train,

56.     At all times relevant hereto, Defendants UPR, MTA and DOES 1 through 50, and each of them, negligently hired and discharged mandatory and/or nondelegable duties in the ownership, lease, control, development, construction, design, management, inspection, maintenance and/or repair of the INCIDENT SITE.

57.     At all times relevant hereto, Defendants DOES 1 through 50, inclusive, were the agents, servants, contractors, subcontractors, independent contractors and/or employees of Defendants UPR and/or MTA, and in doing the things herein alleged, were acting within the course and scope and purpose of their authority as such agents, servants, contractors, subcontractors, independent contractors and/or employees, and with the permission and consent of their employers and co-Defendants. One or more agents, servants, contractors, subcontractors, independent contractors

LAW OFFICES OF VINCENT W. DAVIS & ASSOCIATES
150 N. SANTA ANITA AVENUE, SUITE 200
ARCADIA, CALIFORNIA 91006
PHONE (626) 446.6442, FACSIMILE (626)446.6454

and/or employees of Defendants UPR; MTA; and DOES 1 through 50 caused Decedent's death and the damages to Plaintiffs in the scope of his or her employment, agency and/or representation under circumstances where he or she would be personally liable.

58.     At all times relevant hereto. Defendant UPR, by itself or through its agents, servants, contractors, subcontractors, independent contractors and/or employees, negligently hired and/or contracted with Defendants MTA and/or DOES 1 through 50 in the management and operation of its property and the subject train and negligently failed to discharge its mandatory and/or non-delegable duties.

59.     At all times relevant hereto. Defendant MTA, by itself or through its agents, servants, contractors; subcontractors, independent contractors and/or employees, negligently hired and/or contracted with Defendants UPR and/or DOES 1 through 50 in the management and operation of its property and negligently failed to discharge its mandatory and/or non-delegable duties.

60.     Defendants DOES 51 through 75, inclusive and each of them, owned, leased, controlled, developed, constructed, designed, managed, operated, inspected, maintained and/or repaired the area in or about the INCIDENT SITE.

61.     Defendants DOES 76 through 100, inclusive and each of them, are-negligently or otherwise responsible in some manner for the events and happenings herein referred to, and negligently or otherwise caused injuries and damages proximately thereby to the Plaintiffs as herein alleged.

62.     The INCIDENT SITE was in an unsafe, dangerous and defective condition due to, inter alia, the negligent and careless ownership, leasing, operation, construction, building, design, maintenance, management, repair, control, inspection, hiring, fencing, discharge of mandatory and/or non-delegable duties, warnings, signage, visibility, obstructions, vegetations, trees and/or illuminations of same by said Defendants, and each of them. Defendants, and each of them, negligently and carelessly failed, refused and/or neglected to keep and maintain the INCIDENT SITE in a safe and usable condition for pedestrians, and negligently and carelessly failed to warn Decedent of the dangers of said INCIDENT SITE. Said Defendants had mandatory or nondelegable duties to inspect and maintain the INCIDENT SITE in a safe condition for pedestrians.

LAW OFFICES OF VINCENT W. DAVIS & ASSOCIATES
150 N. SANTA ANITA AVENUE, SUITE 200
ARCADIA, CALIFORNIA 91006
PHONE (626) 446.6442, FACSIMILE (626)446.6454

63.     Defendants, and each of them, are liable for Decedent's death and Plaintiff's injuries and damages in that, later alia, Defendants negligently hired, discharged mandatory and/or non-delegable duties and/or negligently owned, leased, controlled, developed, constructed, fenced, designed, managed, operated, inspected, repaired and/or illuminated the INCIDENT SITE; failed to place, maintain or repair proper signs and/or markings and/or fence; and failed to inspect, maintain and/or repair the area in and around the INCIDENT SITE.

64.     Defendants failed to warn the public of the unsafe, dangerous and defective conditions at the INCIDENT SITE.

65.     Defendants also failed to erect/maintain a barrier or fence to keep Decedent from accessing the tracks, or walking upon the railroad tracks at the INCIDENT SITE, which includes but is not limited to, a barrier preventing access from the dirt roads, pedestrian walkways and/or paths leading to the tracks.

66.     Defendants encouraged and allowed people to enter the area of the tracks, walk along and/or cross the tracks, through dirt roads near the tracks, pedestrian walkways and pedestrian paths that were owned, controlled, constructed by or allowed to exist by Defendants. Prior to the incident, the fact that pedestrians frequently and routinely accessed and crossed the tracks and walked upon the tracks was known to Defendants. Worn dirt roads and pedestrian paths were allowed to exist upon the properties that were owned and/or controlled by Defendants, and each of them, which drew pedestrians to the tracks and encouraged pedestrians to come into the area.

67.     At the time Decedent encountered the unsafe, dangerous and defective conditions, Defendants, and each of them, had actual or constructive notice of the existence of the aforementioned unsafe, dangerous and defective conditions and the negligent luring and discharge of mandatory and/or non-delegable duties, and failed to prevent Decedent from being killed at the INCIDENT SITE by fixing the above-described unsafe, dangerous and defective conditions.

68.     Decedent's use of Defendants' property was reasonably foreseeable at the time of the incident It was reasonably foreseeable that as a direct and proximate result of said acts, omissions and

LAW OFFICES OF VINCENT W. DAVIS & ASSOCIATES
150 N. SANTA ANITA AVENUE, SUITE 200
ARCADIA, CALIFORNIA 91006
PHONE (626) 446.6442, FACSIMILE (626)446.6454

negligence of Defendants, and each of them, and each of their breach of duties, that Decedent would be killed and Plaintiffs caused to sustain general and economic damages.

69.     At all times relevant hereto, Defendants, and each of them, either by themselves or through their agents, servants, contractors, subcontractors, independent contractors and/or employees negligently performed their duties and failed to warn Decedent of unsafe and dangerous conditions associated with the INCIDENT SITE. Defendants are liable for breaches of their duties set forth herein.

70.     Defendants, and each of them, are vicariously liable for Decedent's death and Plaintiff's injuries and damages that were caused in whole or part by their agents, servants, contractors, subcontractors, independent contractors and/or employees.

71.     At all times relevant hereto, Defendants, and each of them, owed a duty of care to Decedent and others. Said duty of care to pedestrians and others, includes without limitation, the duty to follow safety regulations, to avoid causing injury to pedestrians in the area of the INCIDENT SITE, to avoid causing injury to pedestrians crossing railroad tracks, to sound a sufficient audible warning device, to maintain trains under safe speed, to keep a lookout for crossing traffic and keep trains under control necessary to cope with foreseeable situations, and to install and maintain adequate warning systems including posting signs, warning lights, barriers and/or flagmen at crossings.

72.     At all times relevant hereto, Defendants, and each of them, owed a duty of care to Decedent and others. Said duty of care to protect Decedent and others, includes without limitation, the duty to follow safety regulations, to avoid discharging Decedent without proper follow up plan, to follow up with the Decedent after his release from care.

73.     It was reasonably foreseeable that as a direct and proximate result of said acts, omissions and negligence of Defendants, and each of them, and each of their breach of duties, that Decedent would be killed and Plaintiffs caused to sustain general and economic damages.

74.     As a direct and proximate result of said acts, omissions and negligence of Defendants, and each of them, Decedent was killed and Plaintiffs have been generally damaged in a sum in excess of the jurisdictional limits of the Superior Court, Limited Jurisdiction.

LAW OFFICES OF VINCENT W. DAVIS & ASSOCIATES
150 N. SANTA ANITA AVENUE, SUITE 200
ARCADIA, CALIFORNIA 91006
PHONE (626) 446.6442, FACSIMILE (626)446.6454

LAW OFFICES OF VINCENT W. DAVIS & ASSOCIATES
150 N. SANTA ANITA AVENUE, SUITE 200
ARCADIA, CALIFORNIA 91006
PHONE (626) 446.6442, FACSIMILE (626)446.6454

75.     As a direct and proximate result of the said acts, omissions and negligence of Defendants, and each of them, Plaintiffs have incurred, and will incur, special damages, which include without limitation: funeral and burial expenses, the loss of financial support Decedent would have contributed to the family; the loss of gifts or benefits that Plaintiffs would have expected to receive from Decedent; the reasonable value of household services that Decedent would have provided; and other pecuniary losses, the full nature and extent of which are not yet known to Plaintiffs, and leave is requested to amend this Complaint to conform to proof at the time of trial.

WHEREFORE, Plaintiffs pray for judgment against Defendants, and each of them, as herein set forth.

## SECOND CAUSE OF ACTION

**Failure to Protect From Harm in Violation of the Fourteenth Amendment**

**to the Constitution of the United States**

**(Survival Action - 42 U.S.C § 1983) (Against All Defendants)**

76.     Plaintiffs re-allege paragraphs 1-75 and incorporate them herein as though fully set forth.

77.     Each Defendant could have taken action to prevent unnecessary harm to YAELI MOZZELLE GALDAMEZ aka "ANDREW GALDAMEZ/ANDREW ELIJAH MARTINEZ but refused or failed to do so.

78.     Defendants UPR, MTA and DOES 1 through 100 failed to have minimally necessary policies and procedures concerning the operation and maintenance of Defendants UPR train and track and maintain the INCIDENT SITE.

79.     Defendants COLA and DCFS, and Does 101 through 150, and each of them, failed to have minimally necessary policies and procedures among other things concerning the adequate follow up and maintaining contact with Decedent during his sex change process.

80.     Defendant PVH failed to have minimally necessary policies and procedures concerning the adequate treatment of Decedent, whom they knew or should have known was in need of medical attention for his Suicidal attempts.

COMPLAINT FOR DAMAGES

LAW OFFICES OF VINCENT W. DAVIS & ASSOCIATES
150 N. SANTA ANITA AVENUE, SUITE 200
ARCADIA, CALIFORNIA 91006
PHONE (626) 446.6442, FACSIMILE (626)446.6454

81.     Defendants BOULDIN, BAGAI, HENRIQUEZ and SVEDAS failed to have minimally necessary policies and procedures among other things concerning the adequate follow up and maintaining contact with Decedent during his sex change process.

82.     Defendants COLA, DCFS, PVH, BOULDIN, BAGAI, HENRIQUEZ and SVEDAS have consistently demonstrated deliberate indifference to their constitutional obligation to provide minimally adequate medical care to Decedent. Defendants COLA, DCFS, PVH, BOULDIN, BAGAI, HENRIQUEZ and SVEDAS, and Does 101 through 150, and each of them, failure to correct their policies, procedures, and practices, despite longstanding and repeated notice of significant and dangerous deficiencies, evidences deliberate indifference in the provision of medical treatment.

83.     Defendants COLA, DCFS, PVH, BOULDIN, BAGAI, HENRIQUEZ and SVEDAS and Does 101 through 150, and each of them, were specifically on notice that Decedent was in need of urgent medical attention for his Suicidal attempts and "5150 Psychiatric Hold".

84.     Defendants COLA, DCFS, PVH, BOULDIN, BAGAI, HENRIQUEZ and SVEDAS and Does 101 through 150, and each of them, failed to provide necessary medical treatment to Decedent while he was in their custody and care despite his obvious signs of medical distress.

85.     The acts and/or omissions of Defendants COLA, DCFS, PVH, BOULDIN, BAGAI, HENRIQUEZ and SVEDAS and Does 101 through 150, and each of them, as alleged herein, including but not limited to their failure to provide Decedent with appropriate medical care, failure to promulgate appropriate policies and procedures in order to provide treatment to Decedent who require proper supervision and medical assistance, and failure to appropriately train and/or supervise their staff, constituted deliberate indifference to Decedent's serious medical needs, health and safety.

86.     Defendants COLA, DCFS, PVH, BOULDIN, BAGAI, HENRIQUEZ and SVEDAS and Does 101 through 150, and each of them, failed to provide Decedent with medical attention knowing of Decedent's prior Suicidal attempts.

87.     Defendants COLA, DCFS, PVH, BOULDIN, BAGAI, HENRIQUEZ and SVEDAS and Does 101 through 150, failed to immediately provide necessary medical treatment to Decedent while he was in their custody and care despite his obvious signs of medical distress.

88.     The acts and/or omissions of Defendants COLA, DCFS, PVH, BOULDIN, BAGAI, HENRIQUEZ and SVEDAS and Does 101 through 150, and each of them, as alleged herein, including but not limited to their failure to provide Decedent with immediate and appropriate medical care, failure to promulgate appropriate policies and procedures in order to provide treatment to Decedent who require special attention due to his prior Suicidal attempts, and failure to appropriately train and/or supervise their staff, constituted deliberate indifference to Decedent's serious medical needs, health and safety.

89.     Defendants were also on notice that Decedent was undergoing sex change and was on hormone medication.

90.     Defendants COLA, DCFS, PVH, BOULDIN, BAGAI, HENRIQUEZ and SVEDAS and Does 101 through 150, and each of them, have failed to promulgate appropriate policies and procedures in order to provide treatment to Decedent. Defendants COLA, DCFS, PVH, BOULDIN, BAGAI, HENRIQUEZ and SVEDAS and Does 101 through 150, and each of them, also failed to create minimally necessary policies and procedures for ensuring that medical staff provided known sex change patients with adequate and necessary medical treatment. Lastly, Defendants COLA, DCFS, PVH, BOULDIN, BAGAI, HENRIQUEZ and SVEDAS and Does 101 through 150, and each of them, failed to train and supervise medical staff to treat Decedent who was undergoing sex change.

91.     Defendants' acts and/or omissions as alleged herein, including but not limited to their failure to follow a mandated and lifesaving treatment plan, their failed to create minimally necessary policies and procedures for ensuring sex change persons and Suicide attempted patients receive adequate medical treatment, their failure to create minimally necessary policies and procedures for ensuring that medical staff provided sex change patients and Suicide attempted patients who are detoxing with adequate and necessary medical treatment, and their failure to train and supervise

LAW OFFICES OF VINCENT W. DAVIS & ASSOCIATES
150 N. SANTA ANITA AVENUE, SUITE 200
ARCADIA, CALIFORNIA 91006
PHONE (626) 446.6442, FACSIMILE (626)446.6454

LAW OFFICES OF VINCENT W. DAVIS & ASSOCIATES
150 N. SANTA ANITA AVENUE, SUITE 200
ARCADIA, CALIFORNIA 91006
PHONE (626) 446.6442, FACSIMILE (626)446.6454

1  medical staff to treat sex change patients and Suicide attempted patients with serious and life

2  threatening illnesses, constituted deliberate indifference to Decedent's serious medical needs and

3  safety.

4  92.    As a direct and proximate result of Defendants' conduct, Decedent experienced physical pain,

5  severe emotional distress, and mental anguish, as well as loss of his life and other damages alleged

6  herein.

7  93.    The aforementioned acts and/or omissions of Defendants were willful, wanton, malicious,

8  and oppressive and thereby justifying an award to Plaintiffs.

9  94.    As a direct and proximate result of the conduct of Defendants, Decedent was compelled to

10  and did employ the services of hospitals, surgeons, physicians, nurses, and the like, to care for and

11  for the treatment of Decedent and did incur medical, hospital and professional and incidental

12  expenses, all according to proof at the time of trial.

13  95.    As a result of the injuries to Decedent, Plaintiffs have been injured and are entitled to

14  compensatory and punitive damages against Defendants, all according to proof at the time of trial.

15  96.    Plaintiffs have sustained a loss of interest on the value of all damages from the date they

16  were incurred to the present, and said loss will continue into the future.

17

18                          **THIRD CAUSE OF ACTION**

19                          **MEDICAL MALPRACTICE**

20                     **(Survival Actions - California State Law)**

21                          **Against Defendants**

22            **COLA, DCFS, PVH, BOULDIN, BAGAI, HENRIQUEZ**

23                 **And SVEDAS and Does 101 through 150**

24  97.    Plaintiffs re-allege paragraphs 1-96 and incorporate them herein as though fully set forth.

25  98.    Defendants COLA, DCFS, PVH, BOULDIN, BAGAI, HENRIQUEZ and SVEDAS and

26  Does 101 through 150, and each of them, failed to comply with professional standards in the

27  treatment of Decedent's serious medical illness by failing to evaluate, diagnose and treat injuries

28

related to his sex change and Suicidal attempt, failing to address obvious signs of medical distress and ignoring the duties of medical staff to treat and monitor his Suicidal state. Furthermore, Defendants COLA, DCFS, PVH, BOULDIN, BAGAI, HENRIQUEZ and SVEDAS and Does 101 through 150, and each of them, failed to take appropriate measures to treat his sex change and Suicidal state and to appropriately monitor his health.

99.    Defendants COLA, DCFS, PVH, BOULDIN, BAGAI, HENRIQUEZ and SVEDAS and Does 101 through 150, and each of them, failed to appropriately supervise, review and ensure the competence of medical staff's provision of treatment of Decedent, and failed to enact appropriate standards and procedures that would have prevented such harm to him.

100.    The negligent conduct of Defendants PVH, BOULDIN, BAGAI, HENRIQUEZ and SVEDAS and Does 101 through 150, and each of them, was committed within the course and scope of their employment.

101.    As a direct and proximate result of the conduct of Defendants Defendants COLA, DCFS, PVH, BOULDIN, BAGAI, HENRIQUEZ and SVEDAS and Does 101 through 150, and each of them, Decedent was compelled to and did employ the services of hospitals, surgeons, physicians, nurses, and the like, to care for and for the treatment of Decedent and did incur medical, hospital and professional and incidental expenses, all according to proof at the time of trial.

102.    As a result of the injuries to Decedent, Plaintiffs have been injured and are entitled to compensatory and punitive damages against Defendants COLA, DCFS, PVH, BOULDIN, BAGAI, HENRIQUEZ and SVEDAS and Does 101 through 150, all according to proof at the time of trial.

103.    The aforementioned acts and/or omissions of Defendants COLA, DCFS, PVH, BOULDIN, BAGAI, HENRIQUEZ and SVEDAS and Does 101 through 150, and each of them, were willful, wanton, malicious and oppressive and thereby justify an award to Plaintiffs of exemplary and punitive damages to punish the wrongful conduct alleged herein and to deter such future conduct.

104. Plaintiffs have sustained a loss of interest on the value of all damages from the date they were incurred to the present, and said loss will continue into the future.

LAW OFFICES OF VINCENT W. DAVIS & ASSOCIATES
150 N. SANTA ANITA AVENUE, SUITE 200
ARCADIA, CALIFORNIA 91006
PHONE (626) 446.6442, FACSIMILE (626)446.6454

**FOURTH CAUSE OF ACTION**

**NEGLIGENCE AGAINST COLA and DCFS and DOES 101-150**

105.    Plaintiffs re-allege paragraphs 1-104 and incorporate them herein as though fully set forth.

106.    Plaintiffs are informed and believe, and based on such information and belief, alleges that Defendants were negligent in that they acted with deliberate indifference for Decedent's reasonable security, in that they ignored and/or failed to reasonably monitor, to provide security, and to prevent Decedent from committing harm to himself; failed to seek immediately indicated access to mental and medical care for him; and ignored his serious, but treatable, mental health condition.

107.    At all times relevant hereto, defendants were acting in the course and scope of then-employment with Defendant COLA.

108.    Due to Defendants' deliberate indifference to the serious nature and life threatening condition of Decedent, and their failure to timely intervene to provide reasonable security, monitoring and safety necessary in order to prevent his efforts to harm himself, decedent YAELI MOZZELLE GALDAMEZ aka "ANDREW GALDAMEZ/ANDREW ELIJAH MARTINEZ suffered preventable serious injury and harm by committing suicide on September 4, 2019.

109.    As a direct and proximate cause of the negligence of said Defendants, and each of them, decedent YAELI MOZZELLE GALDAMEZ aka "ANDREW GALDAMEZ/ANDREW ELIJAH MARTINEZ was hurt and injured in his health, strength, and activity, and was ultimately killed on or about September 4, 2019. He suffered unjustifiable and substantial physical pain and mental suffering before his death.

110.    As a direct and legal result of the negligence of said Defendants, and each of them, Plaintiffs have been deprived of decedent's love, care, comfort, affection, society, presence, companionship, protection, future support, financial support and services, and a loss of intangible qualities of the spousal and familial relationship. The foregoing has caused Plaintiffs to suffer economic and non-economic damages.

111.    As a further direct and legal result of the death of YAELI MOZZELLE GALDAMEZ aka "ANDREW GALDAMEZ/ANDREW ELIJAH MARTINEZ, Plaintiffs, as successors in interest to

LAW OFFICES OF VINCENT W. DAVIS & ASSOCIATES
150 N. SANTA ANITA AVENUE, SUITE 200
ARCADIA, CALIFORNIA 91006
PHONE (626) 446.6442, FACSIMILE (626)446.6454

the decedent, have incurred and are responsible for the payment of funeral, burial expenses, and other related expenses following his death.

112.     As a further direct and legal result of the negligence of said Defendants, and each of them, decedent YAELI MOZZELLE GALDAMEZ aka "ANDREW GALDAMEZ/ANDREW ELIJAH MARTINEZ was killed and Plaintiffs sustained the damages as hereinabove alleged.

### FIFTH CAUSE OF ACTION

### NEGLIGENCE AGAINST UNION PACIFIC RAILROAD

113.     Plaintiffs re-allege paragraphs 112 and incorporate them herein as though fully set forth.

114.     As the UPR train, which was being operated by the engineers and other members of the crew, approached the INCIDENT SITE, Defendant UPR and DOES 1 through 25, inclusive, and each of them, so wantonly, recklessly, negligently and carelessly operated, controlled, entrusted and maintained the train so as to cause the train to strike and kill the Decedent.

115.     At all times relevant hereto, Defendant UPR and DOES 1 through 25, inclusive, and each of them, negligently entrusted to the engineers and the other members of the crew the train that was owned, leased, controlled, designed, developed, constructed, managed, operated, inspected, maintained -and/or repaired by Defendant UPR and Defendants.

116.     Defendant UPR and DOES 1 through 25, inclusive, and each of them, permitted the engineers and the other members of the crew to operate, engineers and/or drive the train as their agent, servant, contractor, subcontractor, independent contractor and/or employee.

117.     The engineers and the other members of the crew were negligent Inter alia in operating the train by failing to comply with safety regulations, foiling to sound a sufficient audible warning device, failing to regulate said train under sate speed and/or foiling to keep a lookout for Decedent, foiling to slow or stop the train and foiling to control the train so as to avoid hitting Decedent.

118.     Defendants UPR and DOES 1 through 25, and each of them, knew or should have known that the engineers and the other members of (he crew were incompetent or unfit to operate, engineers and/or drive the subject train. Said Defendants knew or should have known that the engineers and

LAW OFFICES OF VINCENT W. DAVIS & ASSOCIATES
150 N. SANTA ANITA AVENUE, SUITE 200
ARCADIA, CALIFORNIA 91006
PHONE (626) 446.6442, FACSIMILE (626)446.6454

1   the other members of the crew were likely to use the subject train, or any other train, in a manner

2   involving unreasonable risk of physical harm to others whom said Defendants should expect to share

3   in or be endangered by the use of the their train so as to directly and proximately cause Decedent's

4   death and Plaintiffs' injuries and damages.

5   119.    At all times relevant hereto, Defendants UPR and DOES 1 through 25, and each of them,

6   also negligently trained or negligently failed to train the engineers and the other members of the

7   crew of the subject train.

8   120.    Defendants UPR and DOES 1 through 25, and each of them, inter alia negligently trained or

9   negligently failed to train the engineers and other members of the crew, who inter alia negligently

10   failed comply with safety regulations, failed to sound a sufficient audible warning device, failed to

11   maintain the subject train under safe speed and/or failed to keep a lookout for Decedent and control

12   the train so as to avoid hitting Decedent

13   121.    Defendants UPR and DOES 1 through 25, and each of them, also breached their duly to

14   ensure the horn on the locomotive involved in the incident complied with the audibility requirements

15   of 49 CFR Section 229.129. Defendants have no evidence that the train horn complied with 49

16   C.F.R. Section 229.129 at the time of the incident In fact, the horn did not provide sufficient audible

17   warning of the train's approach prior to the incident.

18   122.    Defendants UPR and DOES 1 through 25, and each of them, by themselves and through their

19   crew, breached their duty to ensure that the train horn was properly sounded to warn of the train's

20   approach. To be "properly sounded" the horn must not only be loud enough, it must be blown in the

21   correct sequence and for a sufficient duration. The horn was not properly sounded.

22   123.    Defendants UPR and DOES 1 through 25, and each of them, have knowledge that their crews

23   do not properly sound the horn consistently, but have chosen not to investigate or punish horn

24   violations, monitor for insufficient horn activation or otherwise attempt to accurately document these

25   violations. Instead, Defendants UPR and DOES 1 through 25 have intentionally misrepresented the

26   extent of the problem by publishing false and misleading information concerning the nature and

27   extent of the problem. As a result, their train crews are aware that the railroad condones horn

28

LAW OFFICES OF VINCENT W. DAVIS & ASSOCIATES
150 N. SANTA ANITA AVENUE, SUITE 200
ARCADIA, CALIFORNIA 91006
PHONE (626) 446.6442, FACSIMILE (626)446.6454

COMPLAINT FOR DAMAGES

violations. It is the routine practice of Defendants UPR and DOES 1 through 25 to ignore violations

of horn rules. Accordingly, Defendants UPR and DOES 1 through 25, and each of them, breached

their duties.

124.    Defendants UPR and DOES 1 through 25, and each of their crew also breached their duty to

slow or stop the tram to avoid "a specific, individual hazard" at the INCIDENT SITE. They also

failed to approach the INCIDENT SITE prepared to stop due to "an essentially local safety hazard."

If the crew would have been prepared to stop, slowed the train and/or applied the brakes in a timely

fashion they could have avoided the collision or changed the dynamic of the collision, the extent (hat

Decedent's death and Plaintiffs injuries and damages from the collision could have been significantly

reduced or eliminated.

125.    At the time of this incident the conditions at the INCIDENT SITE created an essentially local

safety hazard. However, Defendants UPR and DOES 1 through 25, and each of them, negligently

failed to recognize essentially local safety hazards, failed to instruct train crews and others how to

identify essentially local safety hazards, failed to take any reasonable steps to reduce essentially

local safety hazards and failed to warn of their existence. Accordingly, Defendants UPR, the crew on

the UPR train, and DOES 1 through 25, and each of them, did nothing to slow the train, prepare to

slow the train or otherwise account for the local safety hazard at the INCIDENT SITE. The existence

of an unidentified and unaccounted for local safety hazard was one of the contributing factors that

caused this incident

126.    The area in and around this crossing should have been protected by properly maintained

fence as to prevent entry to the rail tracks by the Decedent. The failure of the train involved in this

incident to slow for the unsafe conditions at this crossing was a contributing factor to this incident

127.    Defendants UPR and DOES 1 through 25, and each of them, also failed to instruct the train

crews on the appropriate circumstances under which they should be prepared to brake, slow or stop

the train for safety hazards. Defendants UPR and DOES 1 through 25, and each of them knew or

should have known the risks to the public created by their failure to instruct their train crews about

the duty to slow or stop the train to avoid safety hazards at unmarked pedestrian crossings, but have

LAW OFFICES OF VINCENT W. DAVIS & ASSOCIATES
150 N. SANTA ANITA AVENUE, SUITE 200
ARCADIA, CALIFORNIA 91006
PHONE (626) 446.6442, FACSIMILE (626)446.6454

COMPLAINT FOR DAMAGES

elected to not instruct their crews about these duties. Because of this inadequate training, the crew approached the INCIDENT SITE without adequately addressing the existing safety hazards at the INCIDENT SITE. The crew's lack of training and preparedness was one of the contributing factors mat caused this incident

128.     Defendants UPR and DOES 1 through 25, and each of them, were operating, controlling, entrusting, maintaining, inspecting and/or repairing the subject train in a negligent and careless manner and in violation of California statutes and regulations and are therefore negligent per se. Said Defendants, and each of them, also violated statutory duties in their entrustment of the train to the engineers and the other members of the crew and are therefore negligent per se. Said Defendants, and each of them also violated statutory duties in their training of the engineers and the other members of the crew and are therefore negligent per se. The purpose of the aforementioned statutes and/or regulations is to protect the interest of the public and Decedent from the kind of harm that resulted from Defendants' actions or inactions and that caused Decedent's death and Plaintiffs injuries and damages and the particular hazard caused by Defendants' actions or inactions, which caused Decedent's death and Plaintiff's injuries and damages.

129.     At all times relevant hereto, Defendants UPR and DOES 1 through 25, and each of them, negligently hired and discharged mandatory and/or non-delegable duties in the ownership, lease, control, development, construction, design, management, inspection, maintenance and/or repair of the INCIDENT SITE and/or the subject train,

130.     At all times relevant hereto, Defendants UPR, and DOES 1 through 25, and each of them, negligently hired and discharged mandatory and/or nondelegable duties in the ownership, lease, control, development, construction, design, management, inspection, maintenance and/or repair of the INCIDENT SITE.

131.     At all times relevant hereto, Defendants DOES 1 through 25, inclusive, were the agents, servants, contractors, subcontractors, independent contractors and/or employees of Defendants UPR in doing the things herein alleged, were acting within the course and scope and purpose of their authority as such agents, servants, contractors, subcontractors, independent contractors and/or

LAW OFFICES OF VINCENT W. DAVIS & ASSOCIATES
150 N. SANTA ANITA AVENUE, SUITE 200
ARCADIA, CALIFORNIA 91006
PHONE (626) 446.6442, FACSIMILE (626)446.6454

employees, and with the permission and consent of their employers and co-Defendants. One or more agents, servants, contractors, subcontractors, independent contractors and/or employees of Defendants UPR and DOES 1 through 25 caused Decedent's death and the damages to Plaintiffs in the scope of his or her employment, agency and/or representation under circumstances where he or she would be personally liable.

132.    At all times relevant hereto. Defendant UPR, by itself or through its agents, servants, contractors, subcontractors, independent contractors and/or employees, negligently hired and/or contracted with Defendants and/or DOES 1 through 50 in the management and operation of its property and the subject train and negligently failed to discharge its mandatory and/or non-delegable duties.

133.    At all times relevant hereto. Defendants UPR, by itself or through its agents, servants, contractors; subcontractors, independent contractors and/or employees, negligently hired and/or contracted with Defendants UPR and/or DOES 1 through 50 in the management and operation of its property and negligently failed to discharge its mandatory and/or non-delegable duties.

134.    Defendants DOES 51 through 75, inclusive and each of them, owned, leased, controlled, developed, constructed, designed, managed, operated, inspected, maintained and/or repaired the area in or about the INCIDENT SITE.

135.    Defendants DOES 76 through 100, inclusive and each of them, are-negligently or otherwise responsible in some manner for the events and happenings herein referred to, and negligently or otherwise caused injuries and damages proximately thereby to the Plaintiffs as herein alleged.

136.    The INCIDENT SITE was in an unsafe, dangerous and defective condition due to, inter alia, the negligent and careless ownership, leasing, operation, construction, building, design, maintenance, management, repair, control, inspection, hiring, fencing, discharge of mandatory and/or non-delegable duties, warnings, signage, visibility, obstructions, vegetations, trees and/or illuminations of same by said Defendants, and each of them. Defendants, and each of them, negligently and carelessly failed, refused and/or neglected to keep and maintain the INCIDENT SITE in a safe and usable condition for pedestrians, and negligently and carelessly failed to warn

LAW OFFICES OF VINCENT W. DAVIS & ASSOCIATES
150 N. SANTA ANITA AVENUE, SUITE 200
ARCADIA, CALIFORNIA 91006
PHONE (626) 446.6442, FACSIMILE (626)446.6454

LAW OFFICES OF VINCENT W. DAVIS & ASSOCIATES
150 N. SANTA ANITA AVENUE, SUITE 200
ARCADIA, CALIFORNIA 91006
PHONE (626) 446.6442, FACSIMILE (626)446.6454

1   Decedent of the dangers of said INCIDENT SITE. Said Defendants had mandatory or nondelegable

2   duties to inspect and maintain the INCIDENT SITE in a safe condition for pedestrians.

3   137.   Defendants, and each of them, are liable for Decedent's death and Plaintiff's injuries and

4   damages in that, later alia, Defendants negligently hired, discharged mandatory and/or non-delegable

5   duties and/or negligently owned, leased, controlled, developed, constructed, fenced, designed,

6   managed, operated, inspected, repaired and/or illuminated the INCIDENT SITE; failed to place,

7   maintain or repair proper signs and/or markings and/or fence; and failed to inspect, maintain and/or

8   repair the area in and around the INCIDENT SITE.

9   138.   Defendants failed to warn the public of the unsafe, dangerous and defective conditions at the

10   INCIDENT SITE.

11   139.   Defendants also failed to erect/maintain a barrier or fence to keep Decedent from accessing

12   the tracks, or walking upon the railroad tracks at the INCIDENT SITE, which includes but is not

13   limited to, a barrier preventing access from the dirt roads, pedestrian walkways and/or paths leading

14   to the tracks.

15   140.   Defendants encouraged and allowed people to enter the area of the tracks, walk along and/or

16   cross the tracks, through dirt roads near the tracks, pedestrian walkways and pedestrian paths that

17   were owned, controlled, constructed by or allowed to exist by Defendants. Prior to the incident, the

18   fact that pedestrians frequently and routinely accessed and crossed the tracks and walked upon the

19   tracks was known to Defendants. Worn dirt roads and pedestrian paths were allowed to exist upon

20   the properties that were owned and/or controlled by Defendants, and each of them, which drew

21   pedestrians to the tracks and encouraged pedestrians to come into the area.

22   141.   At the time Decedent encountered the unsafe, dangerous and defective conditions,

23   Defendants, and each of them, had actual or constructive notice of the existence of the

24   aforementioned unsafe, dangerous and defective conditions and the negligent luring and discharge of

25   mandatory and/or non-delegable duties, and failed to prevent Decedent from being killed at the

26   INCIDENT SITE by fixing the above-described unsafe, dangerous and defective conditions.

27

28

142.    Decedent's use of Defendants' property was reasonably foreseeable at the time of the incident
It was reasonably foreseeable that as a direct and proximate result of said acts, omissions and
negligence of Defendants, and each of them, and each of their breach of duties, that Decedent would
be killed and Plaintiffs caused to sustain general and economic damages.

143.    At all times relevant hereto, Defendants, and each of them, either by themselves or through
their agents, servants, contractors, subcontractors, independent contractors and/or employees
negligently performed their duties and failed to warn Decedent of unsafe and dangerous conditions
associated with the INCIDENT SITE. Defendants are liable for breaches of their duties set forth
herein.

144.    Defendants, and each of them, are vicariously liable for Decedent's death and Plaintiff's
injuries and damages that were caused in whole or part by their agents, servants, contractors,
subcontractors, independent contractors and/or employees.

145.    At all times relevant hereto, Defendants, and each of them, owed a duty of care to Decedent
and others. Said duty of care to pedestrians and others, includes without limitation, the duty to
follow safety regulations, to avoid causing injury to pedestrians in the area of the INCIDENT SITE,
to avoid causing injury to pedestrians crossing railroad tracks, to sound a sufficient audible warning
device, to maintain trains under safe speed, to keep a lookout for crossing traffic and keep trains
under control necessary to cope with foreseeable situations, and to install and maintain adequate
warning systems including posting signs, warning lights, barriers and/or flagmen at crossings.

146.    At all times relevant hereto, Defendants, and each of them, owed a duty of care to Decedent
and others. Said duty of care to protect Decedent and others, includes without limitation, the duty to
follow safety regulations, to avoid discharging Decedent without proper follow up plan, to follow up
with the Decedent after his release from care.

147.    It was reasonably foreseeable that as a direct and proximate result of said acts, omissions and
negligence of Defendants, and each of them, and each of their breach of duties, that Decedent would
be killed and Plaintiffs caused to sustain general and economic damages.

LAW OFFICES OF VINCENT W. DAVIS & ASSOCIATES
150 N. SANTA ANITA AVENUE, SUITE 200
ARCADIA, CALIFORNIA 91006
PHONE (626) 446.6442, FACSIMILE (626)446.6454

COMPLAINT FOR DAMAGES

LAW OFFICES OF VINCENT W. DAVIS & ASSOCIATES
150 N. SANTA ANITA AVENUE, SUITE 200
ARCADIA, CALIFORNIA 91006
PHONE (626) 446.6442, FACSIMILE (626)446.6454

148.   As a direct and proximate result of said acts, omissions and negligence of Defendants, and each of them, Decedent was killed and Plaintiffs have been generally damaged in a sum in excess of the jurisdictional limits of the Superior Court, Limited Jurisdiction.

149.   As a direct and proximate result of the said acts, omissions and negligence of Defendants, and each of them, Plaintiffs have incurred, and will incur, special damages, which include without limitation: funeral and burial expenses, the loss of financial support Decedent would have contributed to the family; the loss of gifts or benefits that Plaintiffs would have expected to receive from Decedent; the reasonable value of household services that Decedent would have provided; and other pecuniary losses, the full nature and extent of which are not yet known to Plaintiffs, and leave is requested to amend this Complaint to conform to proof at the time of trial.

WHEREFORE, Plaintiffs pray for judgment against Defendants, and each of them, as herein set forth.

### SIXTH CAUSE OF ACTION

### NEGLIGENCE AGAINST MTA

150.   Plaintiffs re-allege paragraphs 149 and incorporate them herein as though fully set forth.

151.   At the time of this incident the conditions at the INCIDENT SITE created an essentially local safety hazard. However, Defendants MTA and DOES 1 through 50, and each of them, negligently failed to recognize essentially local safety hazards, failed to instruct train crews and others how to identify essentially local safety hazards, failed to take any reasonable steps to reduce essentially local safety hazards and failed to warn of their existence. The existence of an unidentified and unaccounted for local safety hazard was one of the contributing factors that caused this incident

152.   The area in and around this crossing should have been protected by properly maintained fence as to prevent entry to the rail tracks by the Decedent. The failure of the train involved in this incident to slow for the unsafe conditions at this crossing was a contributing factor to this incident

153.   At all times relevant hereto, Defendants MTA, and DOES 1 through 50, and each of them, negligently hired and discharged mandatory and/or nondelegable duties in the ownership, lease,

COMPLAINT FOR DAMAGES

control, development, construction, design, management, inspection, maintenance and/or repair of the INCIDENT SITE.

154.   At all times relevant hereto, Defendants MTA, and DOES 1 through 50, inclusive, were the agents, servants, contractors, subcontractors, independent contractors and/or employees of Defendants MTA in doing the things herein alleged, were acting within the course and scope and purpose of their authority as such agents, servants, contractors, subcontractors, independent contractors and/or employees, and with the permission and consent of their employers and co-Defendants. One or more agents, servants, contractors, subcontractors, independent contractors and/or employees of Defendants MTA, and DOES 1 through 50 caused Decedent's death and the damages to Plaintiffs in the scope of his or her employment, agency and/or representation under circumstances where he or she would be personally liable.

155.   At all times relevant hereto. Defendants MTA, and DOES 1 through 50, by itself or through its agents, servants, contractors, subcontractors, independent contractors and/or employees, negligently hired and/or contracted with Defendants MTA, and DOES 1 through 50 in the management and operation of its property and the subject train and negligently failed to discharge its mandatory and/or non-delegable duties.

156.   At all times relevant hereto. Defendants MTA, by itself or through its agents, servants, contractors; subcontractors, independent contractors and/or employees, negligently hired and/or contracted with Defendants MTA, and DOES 1 through 50 in the management and operation of its property and negligently failed to discharge its mandatory and/or non-delegable duties.

157.   Defendants DOES 51 through 75, inclusive and each of them, owned, leased, controlled, developed, constructed, designed, managed, operated, inspected, maintained and/or repaired the area in or about the INCIDENT SITE.

158.   Defendants DOES 76 through 100, inclusive and each of them, are-negligently or otherwise responsible in some manner for the events and happenings herein referred to, and negligently or otherwise caused injuries and damages proximately thereby to the Plaintiffs as herein alleged.

159.    The INCIDENT SITE was in an unsafe, dangerous and defective condition due to, inter alia, the negligent and careless ownership, leasing, operation, construction, building, design, maintenance, management, repair, control, inspection, hiring, fencing, discharge of mandatory and/or non-delegable duties, warnings, signage, visibility, obstructions, vegetations, trees and/or illuminations of same by said Defendants, and each of them. Defendants, and each of them, negligently and carelessly failed, refused and/or neglected to keep and maintain the INCIDENT SITE in a safe and usable condition for pedestrians, and negligently and carelessly failed to warn Decedent of the dangers of said INCIDENT SITE. Said Defendants had mandatory or nondelegable duties to inspect and maintain the INCIDENT SITE in a safe condition for pedestrians.

160.    Defendants, and each of them, are liable for Decedent's death and Plaintiff's injuries and damages in that, later alia, Defendants negligently hired, discharged mandatory and/or non-delegable duties and/or negligently owned, leased, controlled, developed, constructed, fenced, designed, managed, operated, inspected, repaired and/or illuminated the INCIDENT SITE; failed to place, maintain or repair proper signs and/or markings and/or fence; and failed to inspect, maintain and/or repair the area in and around the INCIDENT SITE.

161.    Defendants failed to warn the public of the unsafe, dangerous and defective conditions at the INCIDENT SITE.

162.    Defendants also failed to erect/maintain a barrier or fence to keep Decedent from accessing the tracks, or walking upon the railroad tracks at the INCIDENT SITE, which includes but is not limited to, a barrier preventing access from the dirt roads, pedestrian walkways and/or paths leading to the tracks.

163.    Defendants encouraged and allowed people to enter the area of the tracks, walk along and/or cross the tracks, through dirt roads near the tracks, pedestrian walkways and pedestrian paths that were owned, controlled, constructed by or allowed to exist by Defendants. Prior to the incident, the fact that pedestrians frequently and routinely accessed and crossed the tracks and walked upon the tracks was known to Defendants. Worn dirt roads and pedestrian paths were allowed to exist upon

LAW OFFICES OF VINCENT W. DAVIS & ASSOCIATES
150 N. SANTA ANITA AVENUE, SUITE 200
ARCADIA, CALIFORNIA 91006
PHONE (626) 446.6442, FACSIMILE (626)446.6454

the properties that were owned and/or controlled by Defendants, and each of them, which drew pedestrians to the tracks and encouraged pedestrians to come into the area.

164.   At the time Decedent encountered the unsafe, dangerous and defective conditions, Defendants, and each of them, had actual or constructive notice of the existence of the aforementioned unsafe, dangerous and defective conditions and the negligent luring and discharge of mandatory and/or non-delegable duties, and failed to prevent Decedent from being killed at the INCIDENT SITE by fixing the above-described unsafe, dangerous and defective conditions.

165.   Decedent's use of Defendants' property was reasonably foreseeable at the time of the incident It was reasonably foreseeable that as a direct and proximate result of said acts, omissions and negligence of Defendants, and each of them, and each of their breach of duties, that Decedent would be killed and Plaintiffs caused to sustain general and economic damages.

166.   At all times relevant hereto, Defendants, and each of them, either by themselves or through their agents, servants, contractors, subcontractors, independent contractors and/or employees negligently performed their duties and failed to warn Decedent of unsafe and dangerous conditions associated with the INCIDENT SITE. Defendants are liable for breaches of their duties set forth herein.

167.   Defendants, and each of them, are vicariously liable for Decedent's death and Plaintiff's injuries and damages that were caused in whole or part by their agents, servants, contractors, subcontractors, independent contractors and/or employees.

168.   At all times relevant hereto, Defendants, and each of them, owed a duty of care to Decedent and others. Said duty of care to pedestrians and others, includes without limitation, the duty to follow safety regulations, to avoid causing injury to pedestrians in the area of the INCIDENT SITE, to avoid causing injury to pedestrians crossing railroad tracks, to sound a sufficient audible warning device, to maintain trains under safe speed, to keep a lookout for crossing traffic and keep trains under control necessary to cope with foreseeable situations, and to install and maintain adequate warning systems including posting signs, warning lights, barriers and/or flagmen at crossings.

LAW OFFICES OF VINCENT W. DAVIS & ASSOCIATES
150 N. SANTA ANITA AVENUE, SUITE 200
ARCADIA, CALIFORNIA 91006
PHONE (626) 446.6442, FACSIMILE (626)446.6454

169.   At all times relevant hereto, Defendants, and each of them, owed a duty of care to Decedent and others. Said duty of care to protect Decedent and others, includes without limitation, the duty to follow safety regulations, to avoid discharging Decedent without proper follow up plan, to follow up with the Decedent after his release from care.

170.   It was reasonably foreseeable that as a direct and proximate result of said acts, omissions and negligence of Defendants, and each of them, and each of their breach of duties, that Decedent would be killed and Plaintiffs caused to sustain general and economic damages.

171.   As a direct and proximate result of said acts, omissions and negligence of Defendants, and each of them, Decedent was killed and Plaintiffs have been generally damaged in a sum in excess of the jurisdictional limits of the Superior Court, Limited Jurisdiction.

172.   As a direct and proximate result of the said acts, omissions and negligence of Defendants, and each of them, Plaintiffs have incurred, and will incur, special damages, which include without limitation: funeral and burial expenses, the loss of financial support Decedent would have contributed to the family; the loss of gifts or benefits that Plaintiffs would have expected to receive from Decedent; the reasonable value of household services that Decedent would have provided; and other pecuniary losses, the full nature and extent of which are not yet known to Plaintiffs, and leave is requested to amend this Complaint to conform to proof at the time of trial.

WHEREFORE, Plaintiffs pray for judgment against Defendants, and each of them, as herein set forth.

### SEVENTH CAUSE OF ACTION

### LOSS OF CONSORTIUM

### (Against All Defendants and Does 1-200)

173.   Plaintiffs re-allege paragraphs 172 and incorporate them herein as though fully set forth.

174.   At the time of YAELI MOZZELLE GALDAMEZ aka "ANDREW GALDAMEZ/ANDREW ELIJAH MARTINEZ' death of September 4, 2019, YAELI MOZZELLE GALDAMEZ aka "ANDREW GALDAMEZ/ANDREW ELIJAH MARTINEZ"

LAW OFFICES OF VINCENT W. DAVIS & ASSOCIATES
150 N. SANTA ANITA AVENUE, SUITE 200
ARCADIA, CALIFORNIA 91006
PHONE (626) 446.6442, FACSIMILE (626)446.6454

1   was the daughter of SILVIA ABIGAIL MARTINEZ who was going through sex change

2   transformation to become ANDREW GALDAMEZ/ANDREW ELIJAH MARTINEZ .

3   175.   All defendants owed a duty of reasonable care which they breached. As a result of defendants

4   conduct, MOTHER lost the care, love, companionship, affection, society, moral support, and solace

5   of YAELI MOZZELLE GALDAMEZ aka "ANDREW GALDAMEZ/ANDREW ELIJAH

6   MARTINEZ".

7   176.   MOTHER is therefore deprived and will be permanently deprived of her daughter's

8   consortium, care, comfort, and companionship.

9

10                                    **EIGHTS CAUSE OF ACTION**

11                       **Negligent Supervision, Training, Hiring and Retention**

12                            **(Survival Action - California State Law)**

13                            **(Against All Defendants and Does 1-200)**

14   177.   Plaintiffs re-allege and incorporate by reference paragraphs 1 through 176 as though fully set

15   forth herein.

16   178.   Defendants and Does 1 through 200, and each of them, had a duty to hire, supervise, train

17   and retain employees and/or agents so that employees and/or agents refrain from the conduct and/or

18   omissions alleged herein.

19   179.   Defendants and Does 1 through 200, and each of them, breached this duty, causing the

20   conduct alleged herein. Such breach constituted negligent hiring, supervision, training and retention

21   under the laws of the State of California.

22   180.   As a direct and proximate result of the failures of Defendants and Does 1 through 200, and

23   each of them, Ms. Gillis endured pain, suffering, physical injury, and emotional distress prior to his

24   death as alleged herein.

25   181.   As a direct and proximate result of the conduct of Defendants and Does 1 through 200, and

26   each of them, Decedent was compelled to and did employ the services of hospitals, surgeons,

27

28

LAW OFFICES OF VINCENT W. DAVIS & ASSOCIATES
150 N. SANTA ANITA AVENUE, SUITE 200
ARCADIA, CALIFORNIA 91006
PHONE (626) 446.6442, FACSIMILE (626)446.6454

COMPLAINT FOR DAMAGES

34

1 │ physicians, nurses, and the like, to care for and for the treatment of Decedent's and did incur

2 │ medical, hospital and professional and incidental expenses, all according to proof at the time of trial.

3 │ 182.    As a result of the injuries and death to the Decedent, Plaintiffs have been injured and are

4 │ entitled to compensatory and punitive damages against Defendants, all according to proof at the time

5 │ of trial.

6 │ 183.    Plaintiffs have sustained a loss of interest on the value of all damages from the date they

7 │ were incurred to the present, and said loss will continue into the future.

8 │

9 │                            **NINTH CAUSE OF ACTION**

10 │                         **MONELL-RELATED CLAIMS**

11 │                    **AGAINST DEFENDANT COLA; DCFS**

12 │                    **AND DOES 1 THROUGH 50, INCLUSIVE**

13 │

14 │ 184.    Plaintiffs re-allege paragraphs 1-183 and incorporate them herein as though fully set forth.

15 │ 185.    Defendants, including through their respective entities, established and/or followed policies,

16 │ procedures, customs, and/or practices (hereinafter referred to collectively as "policy" or "policies")

17 │ which policies were the moving force behind the violations of Plaintiffs' constitutional rights,

18 │ including those under the Fourteenth Amendment, by, but not limited to:

19 │ a.    The policy of failing to supervise, follow up and control Decedent's sex transformation and

20 │ follow up with Decedent after release from the PVH; and

21 │ b.    By acting with deliberate indifference in implementing a policy of inadequate training,

22 │ and/or by failing to train its officers, agents, employees and state actors, in providing the

23 │ constitutional protections guaranteed to individuals, including those under the Fourteenth

24 │ Amendment, when performing actions related to child abuse and dependency type proceedings.

25 │ 186.    Defendants, including through their respective entities, breached their duties and obligations

26 │ to Plaintiffs, including but not limited to, failing to establish, implement and follow the correct and

27 │ proper Constitutional policies, procedures, customs and practices; by failing to properly select,

28 │

LAW OFFICES OF VINCENT W. DAVIS & ASSOCIATES
150 N. SANTA ANITA AVENUE, SUITE 200
ARCADIA, CALIFORNIA 91006
PHONE (626) 446.6442, FACSIMILE (626)446.6454

supervise, train, control, and review its agents and employees as to their compliance with Constitutional safeguards; and by permitting Defendants and DOES 1 through 50, to engage in the unlawful and unconstitutional conduct as herein alleged.

187.    Defendants knew, or should have known, that by breaching the above-mentioned duties and obligations that it was foreseeable that they would, and did, cause Plaintiffs to be injured and damaged by their wrongful policies, or deliberate lack thereof or deliberate indifference to the need for such policies and/or training, and other acts as alleged herein, and that such breaches occurred in contravention of public policy and their legal duties and obligations to Plaintiffs; and that such policies would subject them to injunctive relief which Plaintiffs assert herein.

188.    These actions, and/or inactions, of Defendants are the moving force behind, and direct and proximate cause of Plaintiffs' injuries, as alleged herein; and as a result, Plaintiffs have sustained general and special damages, to an extent and in an amount to be proven at trial. In addition, Plaintiffs have incurred, and will continued to incur, attorneys' fees, costs, and expenses, including those as authorized by 42 U.S.C. § 1988, to an extent and in an amount subject to proof at trial.

## PRAYER

WHEREFORE, Plaintiffs pray for judgment against all Defendants, as to all causes of action, as follows:

1. Plaintiffs demand a jury trial as to the issues so triable;

2. General damages and special damages according to proof;

3. *As against only the individual defendants* and not any municipality, punitive damages as allowed by law;

4. Attorneys' fees pursuant to 42 U.S.C. § 1988, and any other appropriate statute;

5. Costs of suit incurred herein; and

6. Such other and further relief as the Court deems proper.

//

//

LAW OFFICES OF VINCENT W. DAVIS & ASSOCIATES
150 N. SANTA ANITA AVENUE, SUITE 200
ARCADIA, CALIFORNIA 91006
PHONE (626) 446.6442, FACSIMILE (626)446.6454

## DEMAND FOR A JURY TRIAL

Plaintiffs respectfully demand a jury trial for all claims asserted here.

RESPECTFULLY SUBMITTED,

Date: September 4, 2020                 LAW OFFICES OF VINCENT W. DAVIS & ASSOCIATES

BY: _____

Viktor V. Ginko, Esq.
Vincent W. Davis, Esq.
Attorneys for Plaintiffs

LAW OFFICES OF VINCENT W. DAVIS & ASSOCIATES
150 N. SANTA ANITA AVENUE, SUITE 200
ARCADIA, CALIFORNIA 91006
PHONE (626) 446.6442, FACSIMILE (626)446.6454

COMPLAINT FOR DAMAGES